IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In Re:** | : | **Case No. 15-70613-JAD** |
| | : | |
| **Clark Rentals, Inc.,** | : | |
| | : | **Chapter 11** |
| Debtor | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **Clark Rentals, Inc.,** | : | |
| | : | **Doc. No. ___** |
| Movant | : | |
| | : | |
| | : | **Hearing Date & Time:** |
| v. | : | |
| | : | |
| **Northwest Savings Bank,** | : | |
| | : | |
| Respondent | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEBTOR'S MOTION FOR ORDER AUTHORIZING INTERIM AND PERMANENT
USAGE OF CASH COLLATERAL AND REQUEST
<u>FOR EXPEDITED HEARING THEREON</u>**

**COMES NOW** the Debtor, Clark Rentals, Inc., by and through its proposed undersigned counsel, and does file the within Motion, upon a cause whereof the following is a statement to wit:

1. The Debtor, Clark Rentals, Inc., is a corporate entity organized and existing under the laws of the Commonwealth of Pennsylvania which commenced the within case by filing a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the U.S. Code, 11 U.S.C. §101 <u>et seq</u>. with the United States Bankruptcy Court for the Western District of Pennsylvania on September 2, 2015.

2. This proceeding is a "core" proceeding over which this Court has jurisdiction

pursuant to 28 U.S.C. §§157 and 1334.

3. Respondent, Northwest Savings Bank ("NWSB") has an address of in care of William J. Wagner, President and CEO, Post Office Box 128, Warren, PA 16365 with notice to counsel, Maureen A. Dowd, Esquire, Grenen & Birsic, P.C., One Gateway Center, Ninth Floor, Pittsburgh, PA 15222.

4. As of the date of this filing, no creditors' committee or trustee has been appointed.

5. Upon the filing of the above-captioned case, the Debtor became a Debtor-In-Possession with all of the duties, obligations, and authority of such entities under 11 U.S.C. §1107.

6. The Debtor operates numerous self-service automated car washes and ancillary services in the Blair, Cambria and Clearfield County areas. The Debtor operates the car washes under the moniker "Auto Oasis."

7. At this juncture of the case, the Debtor anticipates that its plan of reorganization will involve using at least a portion of the income generated in the normal course of business from the operation as well as fund raising activities, including but not limited to community bingo, to fund ongoing operations as well as a Chapter 11 plan.

8. NWSB, successor by merger to CSB Bank, holds a UCC Financing Statement found at Pennsylvania Department of State file number 2006083103087 filed on August 30, 2006, continued at file number 2011083005484 on August 30, 2011.

9. NWSB, successor by merger to CSB Bank, holds a UCC Financing Statement found at Pennsylvania Department of State file number 2007061401263 filed on June 14, 2007, continued at file number 2012051503991 on May 15, 2012.

10. NWSB, successor by merger to CSB Bank, holds a UCC Financing Statement found

at Pennsylvania Department of State file number 2006083103102 filed on August 30, 2006, continued at file number 2011083005460 on August 30, 2011.

11. NWSB holds a UCC Financing Statement found at Pennsylvania Department of State file number 2012011109377 filed on January 12, 2012.

12. NWSB also holds UCC Financing Statements against an entity named "Clark Rentals" and found at Pennsylvania Department of State file numbers: 2012011109391 filed on January 12, 2012; 2012011109353 filed on January 12, 2012; and 2008031402374 filed on March 14, 2008, continued at 2013012803334 on January 20, 2013.

13. A review of all of the aforementioned UCC Financing Statements indicates that NWSB takes a security interest in the following:

> all goods, equipment, machinery, tools, fixtures, general intangibles, materials and supplies or other chattels used by the Debtor in the conduct of business; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds); cash proceeds, namely checks and/or deposit accounts or anything else received from the sale, exchange or other disposition of the collateral.

14. Debtor requires immediate and ongoing usage of all of the income generated by the operation of the business.

15. As such, the Debtor anticipates that the Respondent may assert that the income generated through the sale of current and future inventory constitutes "cash collateral" as the term is defined in 11 U.S.C. §363(a).

16. The Debtor believes that the fair market value of the Debtor's various equipment, inventory, and all other personal property assets of the business combined total $4,500.00. This amount excludes the machinery attached to the real estate as the argument could be made that upon placement of the machines used in the automated car wash process turned the

same into fixtures.  Not included in this figure is the real estate owned by the Debtor as NWSB holds mortgages against the properties.

17. According to the Debtor's records, the outstanding balance on all NWSB's obligations is approximately $1,800,000.00.

## SUBSTANTIVE RELIEF SOUGHT

18.  The averments of paragraphs 1-13 are hereby incorporated by reference.

19. Debtor has an immediate need for the use of cash collateral to fund operating expenses such as the purchase of supplies for the operation of its automated car washes, maintenance on the buildings and equipment, water, electricity and other utility bills, telephone services, insurance, and other normal and necessary costs of business.

20. The Debtor will not be able to remain operational if it is not permitted to use the cash collateral immediately.  The Debtor believes that, without payment of the operating expenses outlined in the budget that is attached hereto and marked as "Exhibit A," that the income derived from the business will likely be reduced or, in a worst case scenario, be eliminated.

21. It is believed and therefore averred that if the Debtor cannot remain operational, the estate and its creditors will suffer immediate and irreparable harm.

22. However, pursuant to 11 U.S.C. §363(b), the Debtor may not use, sell, or lease cash collateral unless each entity that has an interest in such collateral consents, or the Court, after notice and a hearing, authorizes such use, sale or lease under the provisions of §363.

23. By this Motion, the Debtor seeks the Court's permission to use cash collateral.  The cash collateral proposed to be used by the Debtor is a portion of the income generated by the business in its daily ongoing operations since the commencement of the above-captioned case on

a go-forward basis, as well as any and all income generated post-petition through the operation of the business.

24. Debtor's records and a search of the Department of State and the records in Blair, Cambria and Clearfield Counties indicate that the sole entity which may have or which may assert an interest in the cash collateral is the Respondent.

25. In order to use cash collateral over a creditor's objection, the Debtor must demonstrate that the creditor's interest is being adequately protected.

26. As set forth above, the Debtor believes that the value of the equipment, accounts receivable, etc. is significantly less than the aggregate balance secured by the lien(s) recited above. In the interest of full disclosure, NWSB, in addition to the collateral secured by its UCC-1 Financing Statements also holds first position liens against the Debtor's real property along with judgments in mortgage foreclosure against the same.

27. As such, there appears sufficient equity and/or collateral which would provide adequate protection to the creditor. However, the Debtor believes that it can provide another form of adequate protection while reducing to total amount due on the claim(s) of NWSB.

28. In connection with this request, the Debtor reviewed its records and formulated a monthly operating budget reflecting the monthly income generated from the business. A copy of the proposed monthly budget is attached as Exhibit "A." The attached budget is a projection of monthly busineess income and expenses; it is not a guarantee of future performance. Obviously, due to the nature of the business, revenue is weather related/driven. As reflected by the operating

budget, the Debtor projects that after operating expenses, it will have an average monthly profit of approximately $16,003.00[1]

29. As adequate protection for the interests of the Respondent in the cash collateral, the Debtor proposes that it make monthly cash payments of $250.00.  In other words, the Debtor proposes that a portion of its monthly profit from the income generated by the business after normal and customary expenses, including the payment of various trade creditors in the future as needed, be paid as adequate protection.  The Debtor is reserving any profit over the attached proposed budget per month as a "buffer" for any unanticipated expenses or in the event that its projected income various as well as an ultimate adequate protection of the interests of NWSB related to its mortgages on the various parcels of real estate.

30. In the event that NWSB receives any adequate protection payment which is later found not to have an allowed secured claim (pursuant 11 U.S.C. §506 or otherwise) it shall be required to disgorge and adequate protection payment(s) it received.

31. All adequate protection payments received by NWSB shall first be applied to the principal due and shall be deducted from the principal balance of its allowed secured claim.

32. The first of the monthly payments set forth above will be made on or before thirty (30) days after the date of an Order of Court granting the relief requested, with each subsequent monthly payment due on the same day of the month going forward.  In the event that the due date falls on a weekend or holiday, the monthly payment will be due on the next business day.

33. In the event that the Debtor fails to make any adequate protection payment when due,

---

[1] This amount does not include a monthly payment to NSWB for payment on the purported secured claim against the various parcels of real estate.  Once this amount is determined, it will be an additional monthly expense.

the adversely affected creditor may give written notice of default to the Debtor and Debtor's undersigned bankruptcy counsel. If within ten (10) days of the notice, the Debtor fail to cure the notice, the Debtor's authority to use cash collateral will be terminated immediately, unless the Court otherwise authorizes usage of cash collateral, or the affected creditor consents, in writing, to such usage.

34. The Debtor respectfully submits that the above-described payments are sufficient to "adequately protect" the Respondent's interest in the cash collateral (if any).

35. As additional adequate protection to protect against a diminution in the value of any interest NWSB may have in the cash collateral, NWSB is hereby granted a security interest(s) ("Replacement Lien(s)") in the assets of the Debtor as enunciated in the UCC Financing Statements filed of record. The Replacement Liens shall have the same validity, priority and extent (if any) as the lien(s) on cash collateral that NWSB held at the time of the commencement of the instant case. **Not** included among said personal property assets is the Debtor's interest in any claim(s) under Chapter 5 of the United States Bankruptcy Code.

36. Pursuant to Local Rule 4001-2(b)(1), the within cash collateral motion and the attached proposed order does or does not contain the following provisions:

   **A. Cross-collateralization protection (other than replacement liens or other adequate protection):**

   Included in Proposed Order:   No

   Location:                     n/a

   Justification:                n/a

B. **Binding provisions concerning validity, perfection, or amount of claims of pre-petition secured creditor, or waiver of claims against secured creditor without requisite notice periods:**

    Included in Proposed Order: No

    Location: n/a

    Justification: n/a

C. **Waiver of estate's interest in claims, including Chapter 5 Claims:**

    Included in Proposed Order: No

    Location: n/a

    Justification: n/a

D. **Granting of liens on estate's Chapter 5 Claims:**

    Included in Proposed Order: No

    Location: n/a

    Justification: n/a

E. **Provisions deeming pre-petition secured debt to be post-petition debt, or provisions concerning payment of pre-petition debt using post-petition loans:**

    Included in Stipulation: No

    Location: n/a

    Justification: n/a

**F. Disparate treatment of estate professionals concerning professional fee carveouts:**

    Included in Proposed Order:    No

    Location:    n/a

    Justification:    n/a

**G. Priming liens:**

    Included in Proposed Order:    No

    Location:    n/a

    Justification:    n/a

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order authorizing the immediate usage of cash collateral on an interim basis, and following a final hearing on the instant Motion, authorizing the Debtor to utilize cash collateral on a permanent basis going forward.

## REQUEST FOR EXPEDITED HEARING

37. The averments of paragraphs 1-32 are hereby incorporated by reference.

38. Pursuant to Fed. R. of Bankr. P. 4001(b), a final hearing on a Motion to use cash collateral may not be commenced earlier than fourteen (14) days after service of such Motion.

39. However, and also pursuant to Fed. R. Bankr. P. 4001(b), the Court may, upon request, conduct a preliminary hearing on the within Motion and authorize the use of cash collateral on an interim basis.

40. The Debtor seeks interim usage of cash collateral pending a final hearing on this Motion for the reasons stated above, to be held as soon as suits the convenience of the Court.

41. A preliminary hearing is necessary to avoid immediate and irreparable harm to the

Case 15-70613-JAD    Doc 7    Filed 09/02/15    Entered 09/02/15 16:05:19    Desc Main
Document      Page 10 of 10

estate and its creditors.

42. Accordingly, the Debtor respectfully submits that cause for an expedited preliminary hearing exists.

43. Pursuant to Fed. R. Bankr. P. 4001(b), the Debtor seeks an expedited preliminary hearing, to be scheduled as soon as suits the convenience of the Court.

44. The need for an expedited preliminary hearing has not been caused by any lack of due diligence on the part of the Debtor or its counsel, but arises solely due to circumstances beyond their control.

**WHEREFORE**, the Debtor respectfully requests that the Court consider the Debtor's request for an Order authorizing the immediate usage of cash collateral on an expedited basis, and further, it does authorize the proposed undersigned counsel to file the within Motion on its behalf.

>Respectfully Submitted,
>
>Spence, Custer, Saylor, Wolfe & Rose, LLC
>
>By:     /s/ *Kevin J. Petak,*
>James R. Walsh, Esquire
>PA ID# 27901
>Kevin J. Petak, Esquire
>PA ID #92154
>400 Ameriserv Financial Building
>P.O. Box 280
>Johnstown, PA 15907
>Tel: 814.536.0735
>Fax: 814.539.1423
>jwalsh@spencecuster.com
>kpetak@spencecuster.com
>Proposed Counsel for Debtor-in-Possession